(Lucas County, O., Common Pleas.)

WILLIAM MATTISON v. L. S. & M. S. R. R. Co.

*Blacklisting R. R. Employe—Liability of R. R. Co.*—Where there is no contract between a R.. R Co. and one of its employes, binding either for a specified length of time, the employment may be terminated by either at any time with or without cause; but while a R. R. Co. has the right to discharge such employe, it has no right to interfere witn or prevent such employe from obtaining employment elsewhere; and where such R. R. C., by its agents or officers, by their action in enforcing the rules of the R. R. Co.,renders it impossible for such employe to obtain other employment in his chosen vocation as a railroad man, the R. R. Co. will be liable in damages to such employe.

*Malice defined*—Malice may be express or implied, and will be implied where there is an unlawful purpose and intent to cause damage or loss to another.

*Combination between R. R. Co's.*—It is not necessary in such case to prove a combination between R. R. Companies through their officers in the enforcement of their rules; if the R. R. Co. acted intentiooally, wilfully and maliciously, and thereby caused damage to the discharged employe, he is entitled to recover damages

Charge of the Court.

PRATT, J.

Gentlemen of the Jury:—On the 19th day of May, 1894, William Mattison, the plaintiff in this case, commenced his action in this court against the Lake Shore and Michigan Southern Railway Company,and thereafter filed herein his amended petition, to which the defendant, the Railway Company, has filed its answer; and upon the issues made by this amended petition, and this answer, this case has been upon trial and is now submitted to your determination under the instructions which the court will give you as to the law.

The plaintff alleges for his cause of action against the. defendant—after setting forth the incorporation of the defendant company —that he, the plaintiff, had been in the employ of said company from the year 1879 down to the 9th of April, 1892; that he is a man of sober and industrious habits; that he has served said company in the capacity of a brakeman until the year 1885, and after that as conductor, performing all his duties faithfully and well, and becoming proficient in the knowledge of his duties in the capacities in which he was employed. That he had never done any other work— knew nothing of any other kind of work— that he was, in March, 1892, earning, and his labor was worth $120 per month. That because of his standing and knowledge of his work and his experience, he was appointed by his fellow workmen to represent them in several conferences with managing officers of the defendant company and his superiors. That, as such representative, he objected to certain rules adopted by the defendant company and by all other trunk line railroads in the United States, to take effect November 15, 1890, and numbered 625 and 626, and commonly known as "black list rules," which read as follows:

"625. No person suspended or dismissed from one department or division of the service shall be employed in another without the consent of the head of the department or division from which he was dismissed, subject to the approval of the superintendent and assistant superintendent, or general superintendent.

"626. No person from any other railroad shall be given employment in the service of the company,unless satisfactory evidence is produced as to previous record, character and ability."

He then alleges that shortly after this meeting this defendant company, by its officers and managers, conspiring and intending to injure plaintiff, and with malice, unlawfully, wrongfully and maliciously discharged plaintiff from its services and employment, without cause or provocation. And he further alleges: "That thereupon. the defendant, conspiring and confederating together with a great many other railroad companies, all acting in concert, to defraud and injure plaintiff and deprive him of the income and benefit of his knowledge and skill as a railroad man, and to further injure plaintiff and prevent him from securing employment in his chosen avocation, trade and calling. maliciously, wrongfully and unlawfully caused the said "black list" rules to be enforced as against this plaintiff, thus preventing him from securing employment from any other railroad company."

"That by reason of the premises and the wrongful, malicious and unlawful acts of the defendant company, plaintiff was and is prevented from securing employment in his chosen avocation in which he had, so as aforesaid, become proficient and skillful, and in the pursuit of which he was able to, and did, make and earn good wages, to-wit: $120.00 per month and he charges and alleges the fact to be that the defendant company wrongfully. unlawfully and maliciously enforced said "black list" rules, numbered 625 and 626 against plaintiff, and demanded and procured the enforcement of said rules against him by other railroads, to his great damage."

"Plaintiff further alleges that, being thus shut out from his chosen advocation, he was compelled to seek work elsewhere."

And by way of making a claim for damages, he alleges that he was earning and receiving as conductor $1,440.00 per year ;that he could only find work as a policeman, and that as such, he could earn only $720, for the first year and $800 per year after that; and that he is now thirty-two years of age. And he further alleges that the defendant company, thereafter, seeking further to in-

jure plaintiff, wrote letters to the Chief of Police of Toledo, Ohio—under whom he was employed—and demanded that he be discharged and removed from the police force of the city, and that defendant is still trying to procure such removal; and, by reason of the premises, he asks judgment against the defendant in the sum of $50,000.

To this amended petition the defendant files its answer and admits the incorporation of the defendant; that the defendant worked for the company, as stated by him; that he is now in the service of the city of Toledo as policeman; that rules numbered 625 and 626 are two of the rules of defendant company. averring that they were proper and adopted in good faith as in its judgment it was competent for them to do in the management of their business; and the answer denies each and every other allegation of the amended petition.

The burden of proof is upon the plaintiff to sustain, by a preponderance of the evidence, such part of the issues thus made as are necessary for him to recover, and as to th's I will now give you the rules of law by which you are to be governed.

The defendant company in the conduct of its business, had the right to make reasonable rules and regulations for the government of its employes in the conduct of that business, and the defendant company had the right to select officers and employes to whom it would entrust the carrying on of the different branches of its business. It is not alleged or charged in this case that this plaintiff was engaged or employed under any contract by which either the company was bound or required to retain him in its service for any definite period of time, nor that the plaintiff was bound or required to remain in its service for any certain length of time; and so far, therefore, as the regulations between plaintiff and defendant were concerned, his employment might be terminated at any time, with or without cause, and simply at the wish or will of either party; and it would make no difference, therefore, either as to the discharge by the company or as to the plaintiff leaving the employment of the company, what the motive was for the action of either. The defendant company, however, while it thus had the right to end plaintiff's employment by the defendant company, was not authorized to interfere with or prevent the plaintiff from obtaining employment elsewhere, and the question for you to determine from the evidence before you in this case is: Whether the defendant company, through its officers or agents, representing the company in the hiring or control of the plaintiff, or of a class of employes of which he was one, did, by their action in enforcing the rules of the company, render it impossible for the plaintiff, as he charges in his petition, to obtain other employment in his chosen vocation as a railroad man.

In order to find the defendant liable to the plaintiff in this case, it will be necessary for you to find that the alleged act or acts of the defendant company, through its officers, charged with the enforcement of the rules in question, was done: (1), intentionally and wilfully; (2), that they were calculated to cause damage to the plaintiff in his said business or vocation; (3), that they were done maliciously; (4), that actual damage and loss resulted therefrom to the plaintiff.

It is important for me here and in this connection, to define the term "maliciously," as I now use it, and as it is to be applied by you in this case. Malice, or malicious acts may be either express or implied, in law. By express malice I mean ill-will or enmity of one person to another. Malice is implied, however, in law, where there is an unlawful purpose and intent to cause damage or loss to another, without right or justifiable cause. In order to find the necessary ingredient of malice in this case to entitle the plaintiff to recover, it is not necessary that you should find this personal ill-will; although if you do find that such hatred or ill-will existed in the mind of the officer of the company committing the act, and who was superior to the plaintiff and under whose control he then was, that would be sufficient; but, if failing to find that, you still find that the act of the defendant company, through such officer or officers, was unjustifiable and done with the intention to injure the plaintiff, then such act would be done maliciously. Unless you find under these rules all the requisites to a recovery by the plaintiff, established by a preponderance of the evidence—not by evidence beyond a reasonable doubt, as in a criminal case, but by a preponderance of the evidence only—then your verdict must be for the defendant.

If, however, you find that the defendant company here, through its officers and agents superior to the plaintiff, and charged with the enforcement of these rules and those which I have been requested by defendant's counsel to give, which I will give further on, intentionally and wilfully and maliciously prevented the plaintiff from obtaining employment by other railroads in like business, and plaintiff thereby sustained damages, plaintiff would then be entitled to a verdict in his favor at your hands. And, in this connection, you are also to consider the question whether the defendant company combined or confederated with other railroad companies—as charged in the petition—for the purpose and with the intention of enabling one railroad company to prevent employes which it had discharged from its service from obtaining employment with such other companies. If you find that the defendant company adopted the rules which are here in question, not for the purpose only of enabling it to conduct its own business, but with the intention and for the purpose of preventing the employes it had discharged from obtaining such other employment, and that their enforcement would have that effect, then the adoption of such rules, for that purpose, would be unjustifia-

ble, and the enforcement of rules, adopted for such unlawful purpose, would be unjustifiable; and, therefore, under the definition which I have already given you, would in law be malicious.

It is not necessary for you to find that there was such combination if you find that the defendant company, through its officers —who were the superiors of plaintiff in his department of business—acted intentionally, wilfully and maliciously, and caused damage to the plaintiff, the plaintiff being entitled to protection as against wrongful acts of the defendant company, whether exercised by it alone or in combination with others. It is for you, however, gentlemen, upon the evidence which has been submitted to you, to determine, as questions of fact, whether the defendant company has, under these rules, either alone or in combination with any other company, or companies, caused the injury complained of by the plaintiff, and it is not for the court to give you any opinion upon this or any other question of fact. You are the sole judges of the weight of the evidence, the credibility of the witnesses, the weight of the testimony.and the inferences of fact to be drawn from the evidence submitted to you in this case on the part of the plaintiff, and also on the part of the defendant.

I have been requested by counsel for the defendant to give you certain rules of law for your guidance, and I do give you the following and correct rules of law which you are to take and consider in connection with all the other rules which I give you in this case. I read requests 1, 2, 3 and 4:

"1. The defendant railway company had the right to make and adopt for its regulation and government and that of its employes, rules Nos. 625 and 626 of its book of rules, whether or not other railway companies also adopted the same or similar rules; and notwithstanding the plaintiff or other employes of said defendant did or did not object thereto.

"2. Notwithstanding the plaintiff may have objected to the adoption by the company of rules 625 and 626, yet if after their adoption he thereafter remained and continued in the service of the company, with knowledge of such rules, he will be taken to have acquiesced in the reasonableness thereof.

"3. The highest obligation which a railway company owes to the public, is to protect the lives of its passengers and employes and property coming into its charge; and in the discharge of this duty, it is not only its right to adopt rules and regulations for the government of its employes as will give such protection, but it is its legal duty so to do.

"4. The safe and successful operation and management of a great railway company necessitates the employment of a great many employes; and the law not only enjoins upon the company, but demands that it shall exercise the maximum of vigilance in their selection and retention in its service; and

in this regard the employer is the sole judge of his competency, fitness and reliability.'

If, under all these rules which I have given you, you find the issues for the plaintiff and against the defendant, you will then consider the question whether the plaintiff has sustained loss or damage by reason of the acts of the defendant company. And in determining this you will examine the evidence for the purpose of ascertaining what the plaintiff was capable of earning and was earning in his employment as conductor before and at the time of his discharge, and what he had been able to earn and receive since that time. If you fail to find that he was, before and at the time of his discharge, then he has not suffered any damage by reason of the discharge, and your verdict would still be for the defendant.

If, however, you find that he is not able to obtain like employment or earn and receive compensation equal to that which he was before earning and received while in defendant's employment, in any other employment after his discharge, then you will determine upon the evidence, the difference between that which he was before earning and receiving and that which he was thereafter unable to earn and receive, and such difference would be estimated by you as one of the elements of his damages to be included in your verdict. Further than this, it would then be your duty, in such case, if you find for the plaintiff upon the issues joined, under the rules given, and find that he has sustained actual damages by reason of and since his discharge and down to the present time, you may then in such case also determine what amount of loss or damage it is reasonably certain he will sustain in the future, if any, by reason of such acts of the defendant: and in determining this you will take into account his age and his reasonable prospect of life and probable future earnings after the discharge, as compared with what they would have been but for the discharge, taking into due account all the contingencies of life and health.

The plaintiff, in no event, can have but one recovery for any damages which he has sustained, by reason of the acts complained of by him in this case; and if you find, under all the rules which I have given you, that the plaintiff is entitled to recover and that he has sustained actual damages, and only in case you find he has so sustained actual damages, then you may also include in your verdict, in addition to the actual damages, exemplary damages; that is, damages by way of actual punishment of the defendant, or of warning to others not to commit like acts. The court can give you no certain rule as to the amount of exemplary damages, if you find under the rules which I have given you that the plaintiff is entitled to exemplary damages. You are not required to give any exemplary damages. The giving or not giving exemplary damages and the amount of exemplary damages, if you do give any, rests with you and must be determined by you, in your sound dis-

cretion and fair judgment, uninfluenced by any passion or prejudice for or against either party, and must in all respects be such as are reasonable under all the circumstances appearing before you in the evidence.

Two forms of verdict will be handed you —one finding for the plaintiff, with a blank for the amount of damages; and if you find for the plaintiff, the amount of damages will be inserted in the blank and your foreman will sign it and you will return it into court; the other form of verdict is a finding for the defendant, which, if you so find, your foreman will sign and you will return it into the court.